## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JAMES PEGUES,               )
                         )
       Plaintiff,      )
                         )
    v.                  )
                         )
NORMAN Y. MINETA, Secretary,  )    Civil Action No. 04-2165 (GK)
U.S. Department of          )
Transportation, Federal     )
Railroad Administration,    )
                         )
       Defendant.      )
                         )

## MEMORANDUM OPINION

Plaintiff, James Pegues, an employee at the Federal Railroad Administration Agency of the U.S. Department of Transportation, brings this suit alleging unlawful retaliation, hostile work environment, and failure to promote in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. ("Title VII"), the Civil Rights Act of 1991, 42 U.S.C. § 1981, and the D.C. Human Rights Act, D.C. Code §§ 2-1401.01 — 2-1411.06 (2001). This matter is before the Court on Defendant's Partial Motion to Dismiss or, in the Alternative, for Summary Judgment ("Def.'s Mot."), [#29], as to Counts II and III of Plaintiff's Second Amended Complaint ("Am. Compl."). Upon consideration of the Motion, Opposition and Reply and the entire record herein, and for the reasons stated below, Defendant's Motion is **granted in part** and **denied in part**.

## I.   BACKGROUND[1]

### A.   Facts

Plaintiff, an African-American male, has been employed as an Industrial Hygienist at the Office of Safety Enforcement and Compliance, Hazardous Materials Division of the Federal Railroad Administration Agency of the Department of Transportation ("the Agency") since 1998.  Am. Compl. ¶ 15.  When Plaintiff joined the Agency, he was designated as a general schedule 13 ("GS-13") employee.  Id. ¶ 25.

Sometime between June 6, 2002 and July 26, 2002, Plaintiff applied for a GS-14 Industrial Hygienist position at the Agency. Id. ¶ 27.  Plaintiff claims that he was qualified for the GS-14 position because, although classified as a GS-13, he performed duties at the GS-14 level.  Id. ¶¶ 29-30.  Instead of hiring Plaintiff for the GS-14 position, the Agency hired Alan Misiaszek, a white male.  Id. ¶ 33.  Plaintiff challenges this non-promotion in Count I of his Second Amended Complaint.[2]

_____

[1] Because the Court relies only on the factual allegations set forth in Plaintiff's Second Amended Complaint, Defendant's Motion will be treated as a motion to dismiss.  For purposes of ruling on a motion to dismiss, the factual allegations of the complaint must be presumed to be true and liberally construed in favor of the plaintiff.  Shear v. National Rifle Ass'n of Am., 606 F.2d 1251, 1253 (D.C. Cir. 1979).  Therefore, the facts set forth herein are taken from Plaintiff's Second Amended Complaint.

[2] Since Defendant has not moved to dismiss Count I, the Court does not set forth all of the details Plaintiff states with respect to this Count in his Second Amended Complaint.

In Count II of his Second Amended Complaint, Plaintiff alleges both retaliation and hostile work environment.  In support of his claims, he sets forth the following allegations:

(1)  On September 18, Plaintiff was in Illinois attending a work training program when another employee "verbally assailed [him], saying [he] was 'not fit to be on the Safety and Health Committee.'"  Id. ¶ 51.

(2)  On or about September 24, 2002, one of Plaintiff's supervisors, Richard McCord, publicly ordered Plaintiff in a belligerent tone to review a work manual that he had already reviewed and then excluded him from meetings at which the manual was discussed.  Id. ¶¶ 52, 53.

(3)  McCord and Daniel Buckley, another employee,[3] distributed embarrassing and humiliating emails about Plaintiff.  Id. ¶¶ 54-55.

(4)  At an October 11, 2002 meeting with Edward Pritchard, the Director of the Office of Safety Enforcement and Compliance, and McCord and Buckley, Pritchard admonished Plaintiff and then "the three [men] ganged up on [him], berating him with false allegations and denying [him] an opportunity to respond."  Id. ¶¶ 56-58.

(5)  During the week of January 13, 2003, Plaintiff's supervisor reassigned Plaintiff's duties as the Agency's

---

[3]  Plaintiff does not specify Buckley's position at the Agency.

Representative on the Safety and Health Committee to Misiaszek, thereby depriving Plaintiff of his GS-14 duties.  <u>Id.</u> ¶¶ 60-61.

(6)  On or about July 11, 2003, Plaintiff met with Pritchard to discuss his decreased duties and Pritchard said that Plaintiff's EEO Complaint would "come back to haunt [him]."  <u>Id.</u> ¶¶ 67-68.

(7)  On or about September 23, 2003, at a meeting in Washington, Buckley and McCord publicly harassed Plaintiff by challenging every issue he discussed.  <u>Id.</u> ¶ 59.

(8)  On or about February 20, 2004, Plaintiff received a "proficient" work evaluation which was lower than his previous ratings of "distinguished" or "meritorious".  <u>Id.</u> ¶ 62.

(9)  On or about March 10, 2005, Misiaszek, Plaintiff's supervisor at the time, "publicly belittled Plaintiff by telling him to 'run alongside of the train and collect urine samples' during a conference on sanitation."  <u>Id.</u> ¶ 63.

(10) The Agency required Plaintiff to hold a certification for his position, while white employees were not required to do the same for their respective jobs.  <u>Id.</u> ¶ 66.

(11) On or about July 21, 2005, Misiaszek and Schoonover, another employee,[4] scrutinized and altered Plaintiff's "compensatory time for travel" submission.  <u>Id.</u> ¶¶ 69-73.

---

[4]  Plaintiff does not specify Schoonover's position at the Agency.

Plaintiff states that Defendant's retaliatory and hostile actions caused him to suffer severe emotional distress and aggravated his prior medical conditions.  Id. ¶ 77.

Finally, in Count III of his Second Amended Complaint, Plaintiff alleges "continued discrimination." On or about December 15, 2004, Plaintiff applied for a GS-15 position within the Agency. Id. ¶ 81.  Alan Misiaszek was selected for this position over Plaintiff.  See id. ¶¶ 83-91.

Plaintiff filed two EEO complaints.  The first, in which Plaintiff alleged discrimination and hostile work environment, was filed on January 31, 2003.  Id. ¶¶ 11.  Plaintiff filed the second EEO complaint on May 5, 2005, alleging continued hostile work environment and continued discrimination after he was denied the GS-15 position.  Id. ¶ 12.

**B.   Procedural Posture**

Plaintiff filed his original Complaint on December 15, 2004. At the time, he was proceeding pro se.  Plaintiff subsequently retained counsel, and on May 6, 2005, the parties filed a Stipulation of Partial Dismissal as to Counts IV, V, and VI of the original Complaint.  Plaintiff's counsel then sought leave to file an Amended Complaint, which Defendant opposed.  Before the Court ruled on that Motion to Amend, Plaintiff requested leave to file a Second Amended Complaint, which the Court granted on September 1, 2005.  On September 23, 2005, Defendant filed the instant Motion to

Dismiss or, in the Alternative, for Summary Judgment as to Counts II and III of Plaintiff's Second Amended Complaint.

In its Motion, Defendant argues that Count II, in which Plaintiff alleges retaliation and hostile work environment, must be dismissed because:  1) many of Plaintiff's alleged retaliatory acts occurred prior to the date he filed his first EEO Complaint, and those acts which occurred after that date do not constitute adverse employment actions, see Def.'s Mot. at 9-10, and 2) Plaintiff has failed to show that the actions Defendants allegedly took were "pervasive or severe [enough] to rise to the level of a hostile work environment," id. at 12. Defendant further argues that Count III must be dismissed because Plaintiff failed to exhaust his administrative remedies as to his non-promotion to the GS-15 position and because Plaintiff was not qualified for that position.

## II.   STANDARD OF REVIEW

A motion to dismiss should be granted only "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  A motion to dismiss tests not whether the plaintiff will prevail on the merits, but instead whether the plaintiff has properly stated a claim.  See Fed. R. Civ. P. 12(b)(6).  Accordingly, the factual allegations of the complaint must be presumed true and liberally construed in favor of

the plaintiff.  Shear v. Nat'l Rifle Ass'n of Am., 606 F.2d 1251, 1253 (D.C. Cir. 1979).

## III.  ANALYSIS[5]

### A.  McDonnell Douglas Framework

In the absence of direct evidence of discrimination, Title VII disparate treatment claims, hostile work environment claims, and retaliation claims are analyzed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Teneyck v. Omni Shoreham Hotel, 365 F.3d 1139, 1149 (D.C. Cir. 2004).  Under this framework, the plaintiff must first establish, by a preponderance of the evidence, a prima facie case of discrimination.  See McDonnell Douglas, 411 U.S. at 802.

To establish a prima facie case of discrimination, the plaintiff must show generally that (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination.  Brown v. Brody, 199 F.3d 446, 455 (D.C. Cir. 1999).  This standard is not rigid, and may be altered to fit the

---

[5]  The legal standard for establishing discrimination is the same under Title VII, the D.C. Human Rights Act, and 42 U.S.C. § 1981. Ben-Kotel v. Howard University, 319 F.3d 532, 534-35 (D.C. Cir. 2003); Stith v. Chadbourne & Parke, LLP, 160 F. Supp. 2d 1, 11 (D.D.C. 2001).

facts of a particular case.  McDonnell Douglas, 411 U.S. at 802 n.13.

If the plaintiff establishes a prima facie case, then the burden shifts to the defendant to "produce admissible evidence that, if believed, would establish that the employer's action was motivated by a legitimate, nondiscriminatory reason." Teneyck, 365 F.3d at 1151 (internal citation omitted).  See McDonnell Douglas, 411 U.S. at 802; Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1288 (D.C. Cir. 1998).  "The employer's burden is one of production, not persuasion."  Teneyck, 365 F.3d at 1151 (internal citation omitted).

If the employer satisfies this burden, "the McDonnell Douglas framework -- with its presumptions and burdens -- disappear[s], and the sole remaining issue [i]s discrimination vel non."  Id. (internal citation omitted).  At this point, "a court reviewing summary judgment looks to whether a reasonable jury could infer intentional discrimination . . . from all the evidence, including '(1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its action; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer).'"  Carter v. George Washington Univ., 387 F.3d 872, 878

(D.C. Cir. 2004) (quoting <u>Waterhouse v. Dist. of Columbia</u>, 298 F.3d 989, 992-93 (D.C. Cir. 2002)).

### B.   Defendant's Motion Is Denied with Respect to Plaintiff's Hostile Work Environment Claim

As described in detail above, in Count II of his Second Amended Complaint, Plaintiff alleges that his supervisors at the Agency subjected him to a hostile work environment by verbally assaulting him, publicly criticizing his performance, reassigning his duties to another employee, lowering his performance evaluation, treating him differently than white employees, and altering his compensatory time for travel.  <u>See</u> Am. Compl. ¶¶ 51-79.

Title VII protects employees from a "workplace . . . permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." <u>Harris v. Forklift Systems</u>, 510 U.S. 17, 21 (1993) (internal citations and quotation marks omitted) (quoting <u>Meritor Savings Bank, FSB v. Vinson</u>, 477 U.S. 57, 65 (1986)).  The hostile work environment standard "takes a middle path between making actionable any conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury." <u>Harris</u>, 510 U.S. at 21. Therefore, "[t]he standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a general civility code." <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 788

(1998) (internal quotation marks and citation omitted). An objectionable workplace environment must be both "objectively and subjectively offensive," Harris, 510 U.S. at 21, and "simple teasing, offhand comments, and isolated incidents . . . will not [suffice]," to establish a hostile work environment claim. Faragher, 524 U.S. at 787-88 (internal citations and quotation marks omitted).

When considering a Title VII hostile work environment claim, courts must look to the totality of the circumstances surrounding the alleged actions, including: (1) the frequency of the discriminatory conduct, (2) the severity of the conduct, (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance, (4) and whether it unreasonably interferes with an employee's work performance. See id.

To establish a prima facie case of a hostile work environment, the plaintiff must show that: (1) he is a member of a protected class; (2) he was subject to unwelcome racial harassment; (3) the harassment occurred because of his race; (4) the harassment affected a term, condition or privilege of his employment; and (5) the employer knew or should have known of the harassment, but failed to take any action to prevent the harassment. See Jones v. Billington, 12 F. Supp. 2d 1, 11 (D.D.C. 1997), aff'd, 1998 U.S. App. LEXIS 15459 (D.C. Cir. June 30, 1998); accord, Lester v. Natsios, 290 F. Supp. 2d 11, 22 (D.D.C. 2003).

The third prong of the _prima_ _facie_ case is certainly significant. In his Opposition to the Motion, Plaintiff refers to "countless" instances of abuse and adverse actions allegedly taken against him. While Plaintiff does not cite to any language used which is overtly racist, that is not the only requirement for demonstrating a hostile work environment. Plaintiff recounts many instances of offensive and inappropriate conduct. At this early stage of the litigation, the Court is not prepared to rule that these are merely isolated incidents which are insufficient to establish a hostile work environment. _Faragher_, 524 U.S. at 787-88. The entire factual picture must be viewed in context and it must be appropriately judged by a jury which will have the benefit of live testimony and cross-examination.

**C. Defendant's Motion Is Denied with Respect to Plaintiff's Retaliation Claim Because Defendant Fails to Set Forth a Legitimate, Nondiscriminatory Reason for its Actions**

As discussed above, in Count II of his Second Amended Complaint, Plaintiff alleges a variety of actions which he claims were taken in retaliation for his protected EEO activity. _See_ Am. Compl. ¶ 51. Plaintiff asserts that these retaliatory actions occurred between September 18, 2002 and July 25, 2005 in response to his January 31, 2003 and May 5, 2005 EEO complaints. _See_ Am. Compl. ¶¶ 11-12, 51, 71.

Defendant moves to dismiss Plaintiff's retaliation claims on the grounds that: (1) many of the alleged retaliatory actions occurred before Plaintiff filed his initial EEO complaint, and (2) Plaintiff fails to establish the existence of an adverse employment action with respect to those actions that occurred after Plaintiff filed his first EEO complaint.  <u>See</u> Def.'s Mot. at 9-11.

With respect to Plaintiff's retaliation claim, Title VII provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

To state a <u>prima facie</u> case of retaliation, a plaintiff must show that: (1) he engaged in protected EEO activity; (2) that a reasonable employee would have found the challenged action so materially adverse that he would have been dissuaded from engaging in the protected EEO activity, and (3) that there was a causal connection between the protected activity and the challenged retaliatory act.  <u>See</u> <u>Rochon v. Gonzalez</u>, 438 F.3d 1211, 1219-20 (D.C. Cir. 2006); <u>Brown v. Brody</u>, 199 F.3d 446, 455 (D.C. Cir. 1999).

The Supreme Court recently clarified the second prong of the prima facie case for retaliation in Burlington N. & Santa Fe R.R. Co. v. White, 126 S.Ct. 2405 (2006).[6]  The Court explained that Title VII's retaliation and discrimination provisions are not "coterminous," id. at 2414, and that the anti-retaliation provision of Title VII is "not limited to discriminatory actions that affect the terms and conditions of employment," id. at 2412-13; see also Rochon, 438 F.3d at 1219.  In other words, to make a prima facie case of retaliation, a plaintiff need not show that he or she was subjected to an "adverse employment action."

Rather, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington, 126 S.Ct. at 2409 (adopting standard as articulated by the D.C. and 7th Circuits) (internal citations omitted).

A court must be careful to "separate significant from trivial harms." Burlington, 126 S.Ct. at 2415.  Merely because an employee has engaged in statutorily protected action does not mean that the employee is "immunize[d] . . . from those petty slights or minor

---

[6]  The parties' briefs for this Motion were filed prior to issuance of this decision.  Therefore, the legal standards the parties cited in their briefs are no longer applicable, and the Court applies the facts as stated in the Plaintiff's Second Amended Complaint to the law as most recently set forth by the Supreme Court.

annoyances that often take place at work and that all employees experience." Rochon, 438 F.3d at 1219 (internal quotation marks omitted).   Instead, the harm suffered by the plaintiff must be "material or significant." Id. (internal quotations omitted).

Moreover, "context matters . . . [and] 'an act that would be immaterial in some situations is material in others.'" Burlington, 126 S.Ct. at 2415-16 (quoting Washington v. Ill. Dep't of Rev., 420 F.3d 658, 661 (7th Cir. 2005)).

> **1.   Defendant's Actions Prior to January 31, 2003 Could Not Have Been Taken in Retaliation for Plaintiff's Use of the EEO Process on That Date**

Many of the alleged retaliatory actions that Plaintiff sets forth occurred prior to the filing of his initial EEO complaint on January 31, 2003.[7]   For obvious reasons, Plaintiff cannot base a retaliation claim on events that took place prior to the time he first engaged in protected EEO activity.   Therefore, the Court does not consider Plaintiff's pre-January 31, 2003 allegations when analyzing the merits of his retaliation claim.

---

[7]   The following actions occurred prior to January 31, 2003: (1) Plaintiff's supervisor told him he was "not fit to be on the Safety and Health Committee"; (2) Plaintiff's supervisor ordered him to review a training manual and excluded him from subsequent meetings to review the manual; (3) Plaintiff's supervisors publicly distributed embarrassing emails about him; (4) Plaintiff's supervisors admonished and berated him; and (5) Plaintiff's supervisors reassigned his duty as the Agency's representative to the Safety and Health Committee.   See Am. Compl. ¶¶ 51-58, 60-61.

### 2.   Plaintiff Has Established a <u>Prima</u> <u>Facie</u> Case of Retaliation Regarding Actions Taken After January 31, 2003

Under the <u>McDonnell Douglas</u> standard, the Court must first determine whether Plaintiff has set forth facts sufficient to establish a <u>prima</u> <u>facie</u> case of retaliation.

First, it is undisputed that Plaintiff engaged in protected activity on January 21, 2003 and May 5, 2005, by filing discrimination complaints with the EEOC.

Second, Plaintiff alleges facts sufficient to establish that "a reasonable employee would have found the challenged action materially adverse [in that] . . . it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination [against the Agency]." <u>Burlington</u>, 126 S. Ct. at 2415. Plaintiff alleges that the following retaliatory actions occurred after January 31, 2003, when he engaged in statutorily protected activity by filing his initial EEO Complaint: (1) Plaintiff's supervisors publicly harassed him at a meeting in Vancouver, Washington by challenging every issue that he discussed; (2) Plaintiff received a performance evaluation of "proficient," which was lower than his normal evaluations of "distinguished" or "meritorious;" (3) during a conference on sanitation, Plaintiff's supervisor told him to "run alongside of the train and collect urine samples;" (4) the Agency required Plaintiff to have a

15

certification that "white male counterparts [in the fields of] hazardous materials specialist or radiation safety officer" were not required to have; (5) Plaintiff's supervisor told him that his EEO complaint would "come back to haunt [him];" (6) Plaintiff's supervisors unfairly scrutinized and altered his compensatory time for travel.  <u>See</u> Am. Compl. ¶¶ 59, 62, 63, 66, 68, 69-73.

While certainly not dispositive, the sheer number of actions taken against Plaintiff weigh in his favor.  Moreover, the severity of the actions alleged cannot be understated.  For example, being told by a supervisor to run alongside a train and collect urine samples is not only totally inappropriate, but would undoubtedly be degrading and humiliating to anyone.  Moreover, receiving lower performance evaluations and having his compensatory time for travel altered can also have a direct bearing on Plaintiff's future performance evaluations and his possibility of obtaining a promotion.  <u>See</u> Am. Compl. ¶¶ 51-73. Finally, being told that his EEO complaint would "come back to haunt [him]" could obviously "dissuade[] a responsible worker from making or supporting a charge of discrimination."  <u>Burlington</u>, 126 S.Ct. at 2409.

The Court concludes that these allegations are sufficient to establish the second prong of the <u>prima</u> <u>facie</u> case.  Plaintiff's allegations cannot be considered "trivial," "petty," or "minor." <u>Burlington</u>, 126 S.Ct. at 2415; <u>Rochon</u>, 438 F.3d at 1219 (internal quotation marks omitted).  Moreover, the Supreme Court has made

clear that the actions must be viewed in context.  Burlington, 126
S.Ct. at 2415-16 (internal citation omitted).  In this case,
Plaintiff was attempting to get promoted, and he claims Defendant's
actions directly impinged on his ability to do so.

Third, Plaintiff also succeeds in establishing a causal
connection between his protected activity and Defendant's
retaliatory actions.  Generally, to establish a causal connection,
Plaintiff must show that "the employer had knowledge of the
employee's protected activity, and the adverse . . . action took
place shortly after that activity."  Rochon, 438 F.3d at 1220
(quoting Mitchell v. Baldridge, 759 F.2d 80, 86 (D.C. Cir. 1985)).

However, temporal proximity is not the only way to establish
a causal connection.  Courts may also look to the evidence as a
whole in the light most favorable to the plaintiff.  See Buggs, 293
F. Supp. 2d 135,149 (D.D.C. 2003) ("proffered evidence as a whole,
when viewed in the light most favorable to the plaintiff, creates
an inference of retaliatory discrimination"); Henderson v. Mineta,
2005 U.S. Dist. LEXIS 16926, at *13-14 (July 14, 2005) (concluding
that there was sufficient evidence from which a jury could
reasonably infer a retaliatory motive despite arguments that
alleged retaliatory actions occurred too far back in time and that
employer was not aware of plaintiff's protected activity).

In this case, although many of the retaliatory actions alleged
by Plaintiff did not occur shortly after he filed his January 31,

17

2003 EEO complaint, there is strong evidence to support a causal connection between his complaint and Defendant's actions. Most significantly, Plaintiff's supervisor's comment that his EEO complaint would "come back to haunt [him]" can be considered direct evidence of a causal connection between Plaintiff's protected EEO activity and the actions later taken against him.  Am. Compl. ¶ 68. Such evidence is sufficient to establish a causal connection between Plaintiff's protected activity and the alleged retaliatory acts.

Accordingly, Plaintiff has established a <u>prima</u> <u>facie</u> case of retaliation.

### 3. Defendant Fails to Offer a Legitimate, Nondiscriminatory Reason for His Actions

Under the <u>McDonnell Douglas</u> analysis, the burden now shifts to Defendant to set forth admissible evidence of a legitimate, nondiscriminatory reason for the actions Plaintiff challenges.

Defendant makes no attempt to do so.  Defendant challenges Plaintiff's case only on the grounds that Plaintiff fails to make out a <u>prima</u> <u>facie</u> case.  <u>See e.g.</u>, Def.'s Mot. at 8-10.  Therefore, Defendant fails to meet its burden of production under <u>McDonnell Douglas</u> and its Motion must be **denied** with respect to Plaintiff's retaliation claims in Count II.

> **D.    Defendant's Motion Is Granted with Respect to Plaintiff's Non-Promotion Claim (Count III) Because He Failed to Exhaust His Administrative Remedies**

Employees at federal agencies may only bring a civil suit under Title VII after exhausting their remedies through the statutorily mandated administrative complaint process. See 42 U.S.C. § 2000e-15(c) (stating that federal employees may file a civil action against a federal agency within 90 days of receipt of final action taken by the EEOC or within 180 days from the filing of the original complaint with the EEOC); see also Bowden v. United States of America, 106 F.3d 433, 437 (D.C. Cir. 1997) ("Complainants must timely exhaust [their] administrative remedies before bringing their claims to court."). The formal procedure for filing a Title VII complaint is set forth in great detail in 29 C.F.R. § 1614.101, et seq..

Plaintiff concedes that he has not exhausted his administrative remedies on Count III of his Second Amended Complaint. He admits that , "the 180 days since the filing of the formal complaint before the EEOC has not lapsed . . . ." Am. Compl. at ¶¶ 13-14. Moreover, the EEOC had not yet taken "final action," 29 C.F.R. § 1614.407, on Plaintiff's administrative complaint when he filed suit in this Court.

Nonetheless, Plaintiff argues that his non-promotion claim should be joined with his retaliation, and hostile work environment

claims because "[t]he Agency's denial of Plaintiff's GS-15 position is part of the continued discrimination and hostile work environment . . . all part of an institutional discrimination orchestrated to improperly hold back the Plaintiff." Am. Compl. ¶ 82. Moreover, Plaintiff argues that joining his claims would prevent "burdening the judicial system twice with obviously related claims." Pl.'s Opp'n at 9.

While Plaintiff's argument may have some practical merit, it runs contrary to Supreme Court precedent. In Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113-14 (2002), the Supreme Court held that discrete acts of discrimination, such as failure to promote, individually trigger Title VII's procedural requirements and therefore cannot be "joined" with other similar claims for statute of limitations purposes. See also Coleman-Adebayo v. Leavitt, 326 F. Supp. 2d 132, 137-39 (D.D.C. 2004).

This principle applies to the case at bar. Count III of Plaintiff's Second Amended Complaint is based entirely on Defendant's failure to promote Plaintiff to the GS-15 position. As failure to promote is a discrete act that individually triggers Title VII's procedural rules, Plaintiff must exhaust his administrative remedies with respect to this claim.[8]

---

[8] Plaintiff asserts that the 180 days had "almost" lapsed when he filed suit in this Court, and that he would have been eligible to file suit based on the allegations in Count III on November 5,

(continued...)

Accordingly, Defendant's Motion is **granted** with respect to Count III of Plaintiff's Second Amended Complaint.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion is **granted** with respect to Count III of Plaintiff's Second Amended Complaint (non-promotion), **granted** with respect to Plaintiff's  hostile work environment claim, and **denied** with respect to Plaintiff's retaliation claim.

An Order will issue with this Memorandum Opinion.


August 22, 2006                    /s/_____
                                   Gladys Kessler
                                   United States District Judge


**Copies to:**  **attorneys of record via ECF**

---

[8](...continued)
2005.